[L. A. 1277.    Department Two.—August 13, 1904.]

CHAPEA WATER COMPANY, Appellant, v. ALFRED B. CHAPMAN et al., Respondents.

OPTION TO DEVELOP AND PURCHASE WATER—MAKING UP DEFICIENCY—PURCHASE OF EXCESS—DEDUCTION OF EXPENSE—CONSTRUCTION OF CONTRACT.—Under a contract giving to the corporation plaintiff the option to develop and purchase water from a five-acre tract of the defendants, which contains a special provision for making up a deficiency in the flow to which the corporation may be entitled by further development, at its expense, but if in making such development an excess of water is made to flow, it shall have the option to purchase the excess within sixty days from finishing the development, "less the amount paid in in making the development,"

said special provision is not to be construed as requiring the defendants to compensate the plaintiff for such expense, either in money or in water, but is to be construed in harmony with the other provisions of the contract as giving to the plaintiff an option to purchase the excess within the time specified, and in making payment therefor to deduct from the amount the money actually expended in making the development.

ID.—LAPSE OF TIME FOR PURCHASE OF EXCESS.—Where no option to purchase the excess was exercised by the plaintiff "within sixty days from finishing the development," and no indication was then given of the portion of the excess which the plaintiff desired to purchase, the defendants were under no obligation to convey to the plaintiff any part of such excess, and judgment was properly rendered in their favor.

ID.—IMMATERIAL RULINGS AND FINDINGS.—Rulings upon evidence urged as erroneous, upon matters which in no respect conduced to the judgment, and findings of fact claimed to be unsupported by the evidence, upon which the judgment does not depend, are immaterial, and need not be considered.

ID.—REFORMATION OF CONTRACT—CONFLICTING EVIDENCE.—Where the plaintiff sought a reformation of the contract, which was denied by the court, and in respect of which the evidence was conflicting, the correctness of the decision of the superior court cannot be reviewed upon appeal.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. D. K. Trask, Judge.

The facts are stated in the opinion.

James Burdett, William P. James, and William M. Northrup, for Appellant.

Stephens & Stephens, and Charles Lantz, for Respondents.

HARRISON, C.—In July, 1896, the defendants were the owners of a tract of five acres of land situate in the county of Los Angeles, a portion of the Santa Anita Rancho, upon which there was an artesian well known as the "Chapea Well," which was estimated to flow forty inches of water, measured under a four-inch pressure (an inch of water being 12,960 gallons), each twenty-four hours, and the plaintiff herein was desirous of purchasing the water flowing in said well. The parties thereupon entered into and executed a contract,

by which, in consideration of the sum of five hundred dollars then paid to the defendants by the plaintiff, they sold and delivered to it the perpetual right to take and carry away from the said well one inch of water in a continuous flow, defined as aforesaid, and agreed with it that they would at any time within two years from the date of said contract, at the option of the plaintiff and upon its demand, convey to it any other water that might be flowing in said well at the same price per inch, and that such option and demand might be exercised as to the whole or any part of said water at any one or more times during said period of two years, but not afterwards. The contract further provided that in case the defendants should develop other water in said five-acre tract the plaintiff should have the first right to the quantity of water which it might elect to purchase under the terms of said agreement in any water developed or in said tract, and might take such quantity of water from any source on said tract, if necessary to make up the quantity conveyed or to be conveyed to it. Within two years from date of the agreement the plaintiff exercised its option from time to time to purchase other water flowing in said well, to the extent of thirty-nine inches, making in all forty inches purchased by it, and proper and sufficient conveyances therefor were executed to it by the defendants. After the expiration of the said two years the flow of water in said well gradually diminished until it shrank below the forty inches purchased by the plaintiff to the extent of several inches, and the defendants, for the purpose of maintaining a supply of forty inches, caused another well to be sunk on said tract, designated as ''Chapea Well No. 2,'' by means of which there was developed sufficient water to maintain the supply of forty inches until July, 1899.

In July, 1899, it was found that the combined flow of water from both of said wells fell short of supplying forty inches by at least ten inches, and thereupon the plaintiff, for the purpose of making up the deficiency, sank another well upon said tract, called ''Chapea Well No. 3,'' by means of which it developed an additional quantity of water. The work of sinking the well and developing the water therefrom was finished on or about the 30th of September, 1899, and the plaintiff incurred expenses therein amounting to $2,581. Thereupon measurements of all of the water flowing from the three

wells were made, and the quantity of such water ascertained, and on March 24, 1900, an engineer employed therefor by the plaintiff made another measurement and found that there was then flowing from all of said wells 43.67 inches of water. The defendants thereupon declared that the extra 3.67 inches of water belonged to them, and directed the engineer to divert the same from the conduits of the plaintiff to those of the defendants.    Thereafter,—viz., April 9, 1900,—the plaintiff demanded from the defendants that they execute to it a conveyance of said 3.67 inches of water, and the defendants refusing to comply with their said demand, the plaintiff commenced the present action to compel them "to convey to it sufficient water from said five-acre tract at the rate of $500 per inch, as will amount to or equal the sum of $2,581.00, money laid out and expended by it in the development of water upon said tract."    Judgment was rendered in favor of the defendants, from which and from an order denying a new trial the plaintiff has appealed.

The contract between the plaintiff and the defendants contains the following provision:—

"It is further covenanted and agreed upon the part of the said parties of the first part that if at any time, or times hereafter, said well should, from any cause, cease to flow at the present level of the top of said well, the quantity of water to which the party of the second part, its successors or assigns, may at that time be entitled, then in that case said party of the second part, its successors or assigns, may proceed to make up the deficiency of water, either by pumping from said well, or, at its option, may take from any other water on or under said five-acre tract enough water to make up the deficiency, and for this purpose may develop by boring artesian wells, or by developing in other modes, on said five-acre tract, the expenses of such development to be borne by the said second party, or its assigns, but if in making such development or increase of water, more water is made to flow than the party of the second part, its successors or assigns, are at the time under the terms of this agreement entitled to, then said second party, or its assigns, is to have the option of purchasing within sixty (60) days from finishing such development, such excess of water, or any portion thereof, less the amount actually paid by it or them in making such

CXLIV. Cal.—24

further development, at the rate of five hundred dollars ($500) per inch, defined as aforesaid. And said first parties will, on demand, execute a proper deed of grant and conveyance thereof to said second party, or its assigns.''

The correctness of the judgment appealed from depends upon the construction to be given to the provisions of the contract thus quoted, the appellant contending that under these provisions, whenever in developing water upon the tract there shall be a flow in excess of the forty inches already conveyed to it, it is entitled to receive from the defendants a conveyance of such an amount of water as will compensate it for its expenditures in making such development, at the rate of one inch of water for each five hundred dollars of expenditure; that after such compensation has been made, if there be any further excess of water, it has a right to purchase the same at the same rate; that the option provided for in the above clause is to be exercised only with reference to such water as may remain unconveyed after defendants receive said compensation; that as its expenditures in making the development in question were more than sufficient to consume the extire excess of water above the forty inches, it was not required to exercise any option for a conveyance thereof, but that the defendants were required to convey the same whenever it should be demanded, in compensation for their expenditures. On the other hand, the defendants contend that, under this provision of the contract, any expenditure which the plaintiff may make in developing water upon the tract is to be borne by itself; that if by means of such development it shall cause a flow of water in excess of the forty inches already conveyed to it, such excess belongs to the defendants; but that the plaintiff is entitled to purchase it at the rate of five hundred dollars per inch, provided it shall exercise its option and make a demand therefor within sixty days after the work of development is completed; that as the work of development was completed prior to October 1, 1899, and no option or demand for a conveyance was made within sixty days thereafter, the plaintiff is not entitled to a conveyance of any of the water.

In support of its contention the appellant relies upon the second member of the above-quoted clause of the contract, which provides that if in making such development more

water is made to flow than it is at the time entitled to, it shall have the option of purchasing "such excess of water, or any portion thereof, less the amount actually paid by it in making such further development, at the rate of five hundred dollars ($500) per inch, defined as aforesaid." This provision of the contract lacks perspicuity, owing doubtless to an amendment having been inserted in the original draft of the contract, but by transposing the last two of the above clauses so that it will read that the plaintiff shall have the privilege of purchasing "such excess of water at the rate of $500 per inch, defined as aforesaid, less the amount actually paid by it in making such further development," all of the terms of the agreement are preserved and its meaning becomes clear.  The contract will then be construed as giving to the plaintiff an option to purchase from the defendant at the rate of five hundred dollars per inch the excess of water developed by it beyond the forty inches to which it is entitled, and, in making payment therefor, to deduct from this amount the money actually paid by it in making such further development.  Such construction not only makes this portion of the above-quoted clause consistent with the other portion thereof, but is also in harmony with the other provisions of the contract.  This clause of the contract consists of two members which relate to the development of water under two distinct conditions, and makes provision in reference to expenses incurred in its development under each of these conditions—one relating to its development for the purpose of making up the deficiency, and the other relating to any excess of water that may be made to flow in making such development.  In a development to make up a deficiency the expenses are to be borne by the plaintiff, and if in making such development more water is made to flow than the plaintiff is at the time entitled to, it has the option of purchasing such excess, and may apply towards the payment therefor "the amount actually paid by it in making such further development."

The initial phrase of the second member of the clause, "but if in making such development," connects it with the matter of the preceding member, and limits its provisions to "*such*" development as is therein named,—viz., that which the plaintiff is authorized to make for the purpose of making up a deficiency.  As by the express terms of that clause the expenses

of such development are to be borne by the plaintiff, it is very clear that for that portion of the expenses incurred by it after July, 1899, in developing water to make up the deficiency under forty inches, the defendants are not required to compensate the plaintiff either in money or in water, and it is equally clear that it is not entitled to compensation from the defendants for its expenses incurred in making up this deficiency, even though in making such development it has caused more than forty inches of water to flow.

It cannot be presumed that the parties would have made an agreement by which the plaintiff is required to develop water at its own expense for the purpose of making up the deficiency, and at the same time agree that it shall be compensated for the expenses incurred in making up the deficiency, if, in making such development, more water shall be made to flow than is necessary to make up the deficiency; and their agreement ought not to be so construed, unless the terms in which they have expressed it require such construction. It would require very clear language to that effect in the agreement to authorize a court to hold that the parties had agreed that the appellant should, at its own expense, develop sufficient water to make up a deficiency, but that if in making such development it should cause to flow an excess of a single inch, it should then be entitled to compensation for all the expense it had incurred in developing the deficiency as well as the excess.

The provision by which the plaintiff in making a purchase of such extra water is authorized to receive a credit upon such purchase for ''the amount actually paid by it in making such further development'' does not in terms create in its favor any right to receive compensation for its expenditures, unless it shall elect to make such purchase, and even in that case it is only ''the expenditures in making such *further* development'' that can be deducted. The *further* development here referred to is the development further, or beyond what is necessary to make up the deficiency—the development of the excess of water which the plaintiff had the option of purchasing, and upon purchasing which he is entitled to a credit for the amount actually paid in its development.

It must be held, therefore, that under the terms of the contract the plaintiff is not entitled to any compensation for

the expenditures incurred by it in the development of water to make up the deficiency under forty inches; that for the excess above forty inches, which was made to flow by reason of such development, it had an option to purchase the whole or any portion thereof from the defendants; that if it would exercise such option it was entitled to a credit for the amount actually paid by it in making the development of such excess, or such portion thereof as it might elect to purchase; that in order to be entitled to make such purchase it must manifest its option therefor "within sixty days from finishing such development," and at the same time indicate to the defendants the portion of such excess which it desired to purchase. The superior court has found that the work of development was completed on or about the thirtieth day of September, 1899, and that the plaintiff did not attempt to exercise any option to purchase any of the excess of water within sixty days after the completion of its development, and that it never demanded a deed to said water prior to April 9, 1900. The defendants were therefore under no obligation to convey any water to the plaintiff, and the court properly rendered judgment in their favor.

Certain rulings of the court upon the admission of evidence are urged as erroneous, but as these rulings were upon matters which in no respect conduced to the judgment finally given by the court, they need not receive any consideration. For the same reason, the objection to certain findings of fact on the ground that they are unsupported by evidence need not be considered, since the judgment does not depend upon these facts, and must have been the same even if those facts had been found otherwise.

In the second count of the complaint the plaintiff, in addition to the matters set forth as above stated, has also alleged certain other facts tending to show that the contract as signed by the parties did not represent the agreement which was in fact entered into between them, and upon these allegations the plaintiff has asked for a judgment directing a reformation of the contract. The court, however, found against the truth of these allegations, and denied a reformation of the contract. As there was a conflict of evidence upon these allegations, the correctness of the decision of the superior court cannot be reviewed.

The judgment and order denying a new trial should be affirmed.

Cooper, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order denying a new trial are affirmed.

McFarland, J., Lorigan, J., Henshaw, J.

Hearing in Bank denied.